United States District Court
Northern District of California

1
2
3
4                           UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7    ONE FAIR WAGE, INC.,                    Case No.  21-cv-02695-EMC
8                    Plaintiff,
9           v.                              ORDER GRANTING IN PART AND
                                            DENYING IN PART DEFENDANT'S
10   DARDEN RESTAURANTS INC.,               MOTIONS TO DISMISS
11                   Defendant.             Docket Nos. 15-17
12
13
14               **I.        INTRODUCTION**

15          Plaintiff One Fair Wage ("OFW"), an advocacy organization focused on eliminating the

16   subminimum cash wage, has filed suit against Defendant Darden Restaurants, Inc. ("Darden").

17   Notably, OFW did not file this action on behalf of any Darden employee, but rather, OFW is

18   seeking redress for the harm caused to OFW as an organization.  OFW alleges, *inter alia*, that

19   Darden's cash wage and tipping policies result in increased sexual harassment and disparate wages

20   for workers across racial groups and that these sex and race-based effects violate the prohibitions

21   on workplace discrimination in Title VII of the Civil Rights act of 1964 ("Title VII"), 42 U.S.C. §

22   2000e-2.  Complaint (Docket No. 1).  As a consequential effect of these policies, OFW alleges that

23   it has had to divest monetary and non-monetary resources to address those policies.

24          Currently pending before the Court are Darden's three Motions to Dismiss, Darden's

25   Request for Judicial Notice, and OFW's Request for Leave to file a sur-reply brief.  *See* Mot. to

26   Dismiss ("MTD"), Docket Nos. 15, 16, 17; Def. Req. for Judicial Notice ("Def. RJN"), Docket

27   No. 23; Pls. Mot., Docket No. 24.  For the reasons discussed below, this Court **GRANTS**

28   Darden's motion to dismiss for failure to state a claim (Docket No. 16) and **DENIES** Darden's

United States District Court
Northern District of California

1   motions to dismiss for lack of personal jurisdiction and improper venue (Docket No. 15) and lack

2   of subject matter jurisdiction (Docket No. 17).[1]

3   **II.      FACTUAL & PROCEDURAL BACKGROUND**

4       On September 29, 2020, OFW, on its own behalf (and not on behalf of any Darden

5   employees), filed a charge of discrimination with the United States Equal Employment

6   Opportunity Commission ("EEOC") alleging race and sex-based disparate impact as a result of

7   Defendant Darden's employment policies. *See* Compl. ¶ 76. On March 4, 2021, the EEOC

8   dismissed that charge at OFW's request and issued OFW a right to sue notice. *See id.* ¶ 77. OFW

9   filed the instant complaint on April 14, 2021. *See id*., Docket No. 1. Darden filed three motions

10  to dismiss and a request for judicial notice.[2]

11      OFW alleges it is a New York nonprofit organization with its principal place of business in

12  Oakland, California. *See* Compl. ¶ 7. OFW's goal is to "lift millions of tipped and subminimum-

13  wage-earning" restaurant workers out of poverty "by requiring all employers to pay the full

14  minimum wage as a cash wage with fair, nondiscriminatory tips on top." *Id.* At the motion

15  hearing, OFW's counsel acknowledged that OFW is an advocacy organization that is engaged in

16  lobbying to pursue its mission and that its mission does not include providing representation or

17  systematic counseling to aggrieved restaurant employees. Additionally, OFW does not allege any

18  formal membership or membership structure in its complaint. Darden, the largest operator of full-

19  service restaurants in the world, is a Florida corporation with its principal place of business in

20  Orlando, Florida. *See* Compl. ¶ 9.

21      At issue are two of Darden's corporate wage related policies (cash wage and tipping

22  described below) which allegedly caused and continue to cause increased sexual harassment and

23  race-based disparate impacts in Darden's workplaces in violation of Title VII. *See id.* ¶¶ 15-16,

24  99. OFW alleges that as an organization it has been injured by these policies because it has been

25

26  _____

    [1] Since the Court finds OFW lacks statutory standing under Title VII, it denies Darden's motion
27  for lack of subject matter jurisdiction as moot.

28  [2] On August 12, 2021, OFW filed a Request for Leave to file a sur-reply (Pls. Mot., Docket No.
    24). The Court's ruling on that request is at footnote four.

"forced to divert its resources to address Darden employees' complaints that they have suffered more and worse sexual harassment than their coworkers of the same sex who are not subject to the policies, as well as complaints from Darden employees of color that they have received less in tips than their white coworkers." *Id.* ¶¶ 8, 68-70.

A.    Cash Wage Policy

Darden enforces a cash wage for all "'tipped employees,'" as defined by the Fair Labor Standards Act of 1938, 29 U.S.C. § 203(t) ("FLSA"),[3] that is equal to the lowest possible cash wage in the state or municipality in which that employee works. *Id.*  ¶ 17.  As such, in the 43 states where state law permits this type of policy, Darden's practice is to pay "tipped employees a subminimum wage, which is the lowest legally-permissible cash wage permitted and less than the minimum wage for non-tipped employees." *Id.*  In effect, employees subject to the policy are paid less than the minimum wage because tips are used to cover the difference.  Darden's handbook states that "tipped team members," are to take the maximum permissible tip credit which is the difference between the cash wage and the minimum wage in the respective state. *Id.* ¶ 18.  The result of this cash wage policy is that all of Darden's "tipped employees at all restaurants nationwide [are] paid the lowest, legally-permissible cash wage permitted." *Id.*

In February and March 2021, OFW conducted a poll of hundreds of current and former Darden employees and found that those who reported that they worked as servers for Darden, were "paid at or below the lowest legally-permissible cash wage." *Id*. ¶ 19.  OFW asserts that this empirical data shows "the existence of a corporate-level cash wage policy or practice requiring local managers to pay tipped employees [] the lowest permissible wage . . . ." *Id.*  OFW argues that Darden's cash wage policy is "a corporate-level instruction to local managers that they must pay tipped employees a cash wage as low as applicable law allows." *Id.* ¶ 20.

OFW acknowledges that in seven states, there is no distinction for large employers

---

[3] Under the FLSA, an employer is required to pay a tipped employee an amount equal to "the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and []an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) [minimum wage] of this title."  29 U.S.C. § 203(2)(A).

United States District Court
Northern District of California

between the minimum wage for tipped employees and non-tipped employees.  *See id.* ¶ 22. However, OFW asserts that Darden's cash wage policy that results in paying its tipped employees the lowest legally permissible wage "is applicable nationally to all tipped employees at Darden restaurants across the United States."  *Id.*  OFW alleges that Darden pays "roughly 20% of its entire workforce a cash wage of $2.14 per hour" and that the "majority of Darden's tipped employees are paid a subminimum wage that is lower than $7.25 per hour."  *Id.* ¶¶ 24-25.

OFW broadly alleges that Darden's cash wage policy directly results in increased sexual harassment because the policy "causes sex to play more of a role in the jobs of all employees subject to the policy . . . ."  *Id.* ¶ 33.  Citing their polling results, OFW notes complaints made by some of Darden's cash wage employees of sexual harassment from customers and other Darden employees.  *Id.* ¶ 34.  OFW also cites to a Darden cash wage employee's EEOC complaint of sexual harassment by a customer and coworkers to support its claim that Darden's cash wage policy increases sexual harassment.  *See id.* ¶ 36.  OFW asserts that because Darden's cash wage employees suffer more frequent and severe sexual harassment from customers in comparison to Darden's other employees (i.e., minimum wage employees), the cash wage employees suffer more financial retaliation from managers and customers because they complain of and rebuff more sexual harassment.  *See id.* ¶ 43.  As such, OFW argues that Darden's cash wage policy "perpetuates a cycle of systemic sexual harassment."  *Id.* ¶ 44.  OFW's complaint cites no study or systemic evidence supporting the nexus between Darden's cash wage policy and increased sexual harassment.

B.    Tipping Policy

OFW contends that Darden encourages and "tacitly requir[es]" its customers to tip its tipped employees "without mediating that process in any way."  *Id.* ¶ 28.  OFW states that pooling tips and adding a standard service charge to all bills and letting customers tip on top of the charge are examples of mediating customer tipping.  *Id.* ¶ 62.  OFW argues the effect of Darden's unmediated tipping policy is that "Darden's customers directly determine a large portion of the wages paid to Darden's tipped employees."  *Id.*  In support of this claim, OFW notes the "tip line" on the customer's bill, the recommended tip percentages on the bill, and various signage

4

encouraging customers to tip. *Id*. Additionally, OFW asserts that Darden actively facilitates this tipping policy by maintaining a Tip Reporting Alternative Commitment with the Internal Revenue Service ("IRS") that requires employees to track and report their tips to both Darden and the IRS. *See id.* ¶ 29.

OFW broadly contends that Darden's unmediated corporate tipping policy results in employees of color receiving less in tips than white employees (presumably because Darden's customers afford less favorable treatment to employees of color than to white employees). *See id.* ¶ 45. As such, "Darden causes employees of color to be paid substantially less than white employees because of their race." *Id*. Because Darden does not mediate the tipping process, customers who might regularly consider race when determining compensation, "directly determine a substantial part of these tipped employees' total wages." *Id.* ¶ 46. In support, OFW cites its own poll results that revealed that white servers on average received higher tips per hour than servers of color. *See id.* ¶ 47. Additionally, Darden's unmediated tipping policy gives managers discretion to assign tipped employees of color to less desirable and less lucrative shifts and restaurant sections, "resulting in them receiving less tips based on their race." *Id*. ¶ 48. In support of this claim, OFW cites charges filed with the EEOC from Darden employees of color that claim because of this policy they received less in tips based on their race. *See id.* ¶ 49. OFW claims that this race-based tipping gap that Darden's tipping policy perpetuates exacerbates Darden's cash wage policy, resulting in many of Darden's employees being paid a subminimum wage. *See id.* ¶ 56. Further, the unmediated tipping policy "perpetuates a cycle of systemic race discrimination against people of color . . . ." *Id.* ¶ 57.

Based on, *inter alia*, the above allegations regarding Darden's cash wage and tipping policies, OFW has asserted the following causes of action:

> (1) Sex-based disparate impact in violation of Title VII, 42 U.S.C. § 2000e-2(a) with respect to Darden's cash wage policy employees.
>
> (2) Race-based disparate impact in violation of Title VII, 42 U.S.C. § 2000e-2(a) with respect to Darden's tipping policy.

OFW requests: declaratory relief that Darden's policies are unlawful under Title VII, a

nationwide injunction prohibiting Darden from maintaining the policies and any other unlawful

employment practices, equitable monetary relief redressing the resources that OFW has been

forced to divert and the harm that OFW has suffered as a result of the policies, reasonable

attorneys' fees and costs, as well as any other relief this Court deems proper.  Compl., Prayer for

Relief ¶ 100.

## III.   LEGAL STANDARDS

A.   Rule (12)(b)(2)

A defendant may move for dismissal on the grounds that the court lacks personal

jurisdiction over the action.  Fed. R. Civ. P. 12(b)(1).

> Where a defendant moves to dismiss a complaint for lack of
> personal jurisdiction, the plaintiff bears the burden of demonstrating
> that jurisdiction is appropriate.  Where [a] motion is based on
> written materials rather than an evidentiary hearing, "the plaintiff
> need only make a prima facie showing of jurisdictional facts."  In
> such cases, "we only inquire into whether [the plaintiff's] pleadings
> and affidavits make a prima facie showing of personal jurisdiction."
> Although the plaintiff cannot "simply rest on the bare allegations of
> its complaint," uncontroverted allegations in the complaint must be
> taken as true.  Conflicts between parties over statements contained
> in affidavits must be resolved in the plaintiff's favor.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Because there is no applicable federal statute governing personal jurisdiction, the Court

applies the law of California – *i.e.*, the state in which the Court sits.  "California's long-arm

jurisdictional statute is 'coextensive with federal due process requirements.'  To exercise

jurisdiction over a non-resident defendant, the defendant must have 'minimum contacts' with the

forum state such that the exercise of jurisdiction 'does not offend traditional notions of fair play

and substantial justice.'"  *Id.* at 800-01.

B.   Rule 12(b)(3)

A defendant may move to dismiss a complaint for improper venue.  Fed. R. Civ. P.

12(b)(3).  Upon a defendant's challenge for improper venue, the plaintiff bears the burden of

showing that venue is proper.  *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491,

496 (9th Cir. 1979).  If the court determines that venue is improper, the court must dismiss the

action or, in the interests of justice, transfer the action to a district or division in which the action

United States District Court
Northern District of California

1    could have been brought.  28 U.S.C. § 1406(a); *see also King v. Russell*, 963 F.2d 1301, 1304 (9th

2    Cir. 1992).

3    C.    Rule 12(b)(1)

4          A defendant may move for dismissal on the grounds that the court lacks subject matter

5    jurisdiction over the action.  Fed. R. Civ. P. 12(b)(1).  Federal district courts are courts of limited

6    jurisdiction, and "[n]o principle is more fundamental to the judiciary's proper role in our system of

7    government than the constitutional limitation of federal-court jurisdiction to actual cases or

8    controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quoting *Raines v.*

9    *Byrd*, 521 U.S. 811, 818 (1997)).  It is the plaintiff's burden to establish subject matter

10   jurisdiction.  *See Ass'n of Am. Med. Colls. v. U.S.*, 217 F.3d 770, 778-79 (9th Cir. 2000);

11   *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376-78 (1994).  "A Rule 12(b)(1)

12   jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

13   1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  A facial attack

14   "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal

15   jurisdiction." *Id*.  A factual attack "disputes the truth of the allegations that, by themselves, would

16   otherwise invoke federal jurisdiction." *Id*.

17         A "district court resolves a facial attack as it would a motion to dismiss under Rule

18   12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the

19   plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to

20   invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing

21   *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).  In a factual attack, however, the court may

22   review evidence outside the pleadings to resolve factual disputes concerning the existence of

23   jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "Once the moving

24   party has converted the motion to dismiss into a factual motion by presenting affidavits or other

25   evidence properly brought before the court, the party opposing the motion must furnish affidavits

26   or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."

27   *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *St. Clair v.*

28   *City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

United States District Court
Northern District of California

United States District Court
Northern District of California

D.     Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (internal quotation marks omitted).

## IV.     **MOTIONS TO DISMISS**

A.     Personal Jurisdiction

"There are two categories of personal jurisdiction: (1) general jurisdiction and (2) specific jurisdiction."  *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018).  Darden moves for dismissal based on lack of both general and specific personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  *See* MTD, Docket No. 15.

1.     General Jurisdiction

Where there is general jurisdiction over a defendant, the plaintiff can bring *any* claim against the defendant in the forum state.  Thus, in order for general jurisdiction to obtain, the defendant's contacts with the forum state must be so continuous and systematic as to render the

United States District Court
Northern District of California

defendant essentially at home in the forum State.  *See Daimler AG v. Bauman*, 571 U.S. 117, 122, 128, (2014); *see also Schwarzenegger*, 374 F.3d at 807 (asking whether the defendant has continuous and systematic contacts that approximate physical presence in the forum state).  "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"  *Daimler*, 571 U.S. at 137.  Although the Supreme Court has not held that "a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business," the Court has also rejected the proposition that there is general jurisdiction over a corporation "in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'  That formulation . . . is unacceptably grasping.  *Id.* (emphasis in original); *see also id.* at 139, (stating that the inquiry is "not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic'" but rather "whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State'").

In the instant case, OFW does not contend that this Court has general jurisdiction over Darden, but alleges that this Court has specific jurisdiction.  Opp'n at 3:1.  Because OFW does not claim that this Court has general jurisdiction over Darden, the Court need only consider whether there is specific jurisdiction.

### 2.  Specific Jurisdiction

At this juncture in the proceedings, OFW need only make a prima facie showing of specific jurisdiction.  *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (noting that, where no evidentiary hearing is held and a court simply receives written materials from the parties, "a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss").  The Ninth Circuit has a three-prong test for analyzing a claim of specific jurisdiction.

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the

9

1

defendant's forum-related activities; and

2

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

3 *Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  The

4 plaintiff has the burden of proving the first two prongs above.  *Id.*  If successful, then the burden

5 "shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not

6 be reasonable." *Id.*  (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

7        a.   <u>Purposeful Availment or Direction</u>

8      Under the first prong of the specific jurisdiction test, the plaintiff must establish that the

9 defendant either purposefully availed itself of the privilege of conducting activities in California,

10 or purposefully directed its activities toward California.  *See Schwarzenegger,* 374 F.3d at 802.

11 The Ninth Circuit has noted that purposeful availment and purposeful direction are two distinct

12 concepts.  "A purposeful availment analysis is most often used in suits sounding in contract.  A

13 purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id*.

14 (internal citations omitted).

15      Purposeful availment involves a determination as to whether "defendant's conduct and

16 connection with the forum State are such that it should reasonably anticipate being haled into court

17 there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  The defendant

18 may not be haled into the jurisdiction through fortuitous contacts or by the unilateral activity of

19 another party.  *Id.*  "A showing that a defendant purposefully availed himself of the privilege of

20 doing business in a forum state typically consists of evidence of the defendant's actions in the

21 forum, such as executing or performing a contract there." *Schwarzenegger,* 374 F.3d at 802.

22 Purposeful direction is evaluated under the three-part "effects" test.  *See id.* at 803.  The "effects"

23 test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly

24 aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the

25 forum state.  *Id.*  "A showing that a defendant purposefully directed his conduct toward a forum

26 state, by contrast, usually consists of evidence of the defendant's actions outside the forum state

27 that are directed at the forum, such as the distribution in the forum state of goods originating

28 elsewhere." *Id.*

United States District Court
Northern District of California

1        OFW claims that Darden has "purposefully availed itself of California by operating dozens

2   of restaurants here and exploiting the state's labor market by employing thousands of employees

3   in California." Opp'n at 5:12-14.  Darden has purposefully availed itself of California given the

4   extensiveness of its alleged operations in the state, all of which presumably required submission to

5   state and regulatory authorities.  *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citing

6   *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986)) ("[T]he

7   'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within

8   the forum State or if he has created continuing obligations to forum residents.").

9              b.    Claim Arises or Relates to Forum Related Activities

10       The second prong in the Ninth Circuit's specific jurisdiction test demands that the claim

11  arise out of the defendant's forum-related activities.  *See World-Wide Volkswagen*, 444 U.S. at

12  297.  In Walden, the Supreme Court emphasized that "it is the defendant, not the plaintiff or third

13  parties, who must create contacts with the forum State." *Walden v. Fiore*, 571 U.S. 271, 291

14  (2014) (emphasis added).  And the effect of the defendant's conduct must be "tethered to" the

15  state, not to the plaintiff.  *Id.* at 290.  In determining whether a plaintiff's claims arise out of the

16  defendant's forum related activity, "the Ninth Circuit follows the 'but for' test." *Menken v. Emm*,

17  503 F.3d 1050, 1058 (9th Cir. 2007) (internal quotation marks and citation omitted).  Under this

18  test, OFW must show that it would not have suffered an injury "but for" Darden's California-

19  related conduct.  *See id.*

20       In *Ford Motor Co.*, an action for vehicle design defect, the Supreme Court held that the

21  due process test for determining specific personal jurisdiction did not depend on a strict causation-

22  only approach that would ask where the vehicles were originally sold, or where they were

23  designed and manufactured.  *Id.* at 1026.  Rather, determining whether the claims "'arise out of or

24  relate to the defendant's contacts with the forum,'" is also an approach for determining specific

25  jurisdiction.  *Id.* at 1025, citing *Bristol-Myers Squibb Co.,* 137 S. Ct. 1773, 1776 (2017).  The

26  Supreme Court held that claims "relate to" a defendant's in-forum contacts if the defendant

27  "serves a market for a product in the forum State and the product malfunctions there."  *Id.* at 1026-

28  1027.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   OFW argues that its Title VII claims relate to Darden's California related activities

2   because both disparate impact claims stem from Darden's corporate cash wage and tipping

3   policies that are maintained in the dozens of California restaurants operated by Darden and impact

4   thousands of Darden's California employees.  Opp'n at 5:26-27-6:1.  Darden argues that the

5   alleged wrongful conduct with respect to the cash wage policy, "is not an activity that Darden

6   undertook in California."  MTD at 5.[4]  Darden emphasizes that the California Labor Code "does

7   not permit employers to utilize the FLSA's tip credit law because Labor Code section 351 states

8   that '[n]o employer . . . shall collect . . . any gratuity . . . that is paid, given to, or left for an

9   employee by a patron, or deduct any amount form wages due an employee on account of a gratuity

10  . . . .'"  *Id.*  OFW concedes that in California, the lowest possible wage a tipped employee can

11  receive is the minimum wage (not a subminimum cash wage), but argues that Darden's cash wage

12  policy still requires those managers to pay those types of employees the lowest possible cash

13  wage.  *See* Opp'n at 6:8-11.

14      At the very least, the asserted racially discriminatory tipping policy does apply in

15  California.  OFW has met its burden on this prong.[5]  *See Fireman's Fund Ins. Co. v. National*

16  _____

17  [4] Darden supplied, with its Reply brief, supplemental facts relevant to OFW's principal place of
    business to support its argument that OFW's claims do not arise out of any of Darden's California

18  activities because OFW is not at home in California.  *See* Reply at 6-9, Docket No. 22.  In its
    Request for Judicial Notice, Darden attached screengrabs from:  (1) OFW's website showing that

19  OFW's contact address is in Cambridge, Massachusetts, and (2) that OFW is not identified as a
    California corporation on the California Secretary of State's website.  *See* Def. RJN, Docket No.

20  23, Exhs. A-B.  Darden requests judicial notice of these documents.  The Court can properly take
    judicial notice of these documents because they can be accurately and readily determined from

21  sources whose accuracy cannot reasonably be questioned and their authenticity is not disputed.
    *See* Fed. R. Evid. 201; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010)

22  ("It is appropriate to take judicial notice of this information, as it was made publicly available by
    government entities . . . , and neither party disputes the authenticity of the web sites or the

23  accuracy of the information displayed therein.").  Accordingly, this Court **GRANTS** Darden's
    Request for Judicial Notice.  However, it does not take notice of the truth of matters stated in those

24  documents.  *In re High–Tech Employee Antitrust Litig.,* 856 F.Supp.2d 1103, 1108
    (N.D.Cal.2012) ("A court may also take judicial notice of the existence of matters of public

25  record, such as a prior order or decision, but not the truth of the facts cited therein.").

26  [5] In footnote 4 of its Reply, Darden notes that, "the fact OFW is not registered to do business in
    California provides this Court with an independent reason to dismiss the matter."  Reply at 9, n. 4.

27  This is because a corporation that fails to register in California is not permitted to maintain a
    lawsuit relating to business activities in California until it complies.  *See id.* (citing Cal. Corp.

28  Code §§ 2105, 2203).  Darden did not argue or request that the Court dismiss on these grounds in
    its Reply.  On August 12, 2021, OFW filed a Request for Leave to file a sur-reply and objected to

12

*Bank of Cooperatives,* 103 F.3d 888, 894 (9th Cir. 1996) (stating that, "[u]nder our Circuit's 'but for' test, a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action").

> c.   Fair Play/Reasonable

Because OFW has satisfied its burden as to the first two prongs, the burden shifts to Darden to satisfy the third prong in the Ninth Circuit's test for specific jurisdiction. *See Schwarzenegger*, 374 F.3d at 802. Darden argues that it would be unreasonable for this Court to exercise jurisdiction and claims that OFW fails to show why it would be reasonable. *See* Reply 7:3-5, 10:8-9.

Once it has been decided that a defendant purposefully established minimum contacts with a forum, "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" in order to defeat personal jurisdiction. *Burger King Corp.,* 471 U.S. at 477. In determining whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," courts in the Ninth Circuit consider seven factors: (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See, e.g., Caruth v. Int'l Psychoanalytical Ass'n,* 59 F.3d 126, 128-129 (9th Cir. 1995).

---

this evidence. *See* Pl. Mot., Docket No. 24. On August 16, 2021, Darden filed an Opposition to OFW's Application for Leave to file a sur-reply brief. *See* Def. Opp'n, Docket No. 25.). This Court **DENIES** OFW's Request for Leave to file a sur-reply since the evidence Darden submitted with its Reply brief is not new evidence. *See* Compl. ¶ 7 (OFW is a New York nonprofit organization with its principal place of business in Oakland, California); Opp'n at 9 (OFW's principal place of business is in California). Rather, it is evidence to support Darden's contention that OFW is not a California corporation and rebut OFW's claim that California is OFW's principal place of business. *See Applied Materials, Inc. v. Demaray LLC,* 2020 WL 8515132, at *1 (N.D. Cal. Dec. 16, 2020) ("evidence submitted with a reply brief is not new evidence when it is submitted to rebut arguments raised in the opposition brief"). Additionally, the request is moot since the Court denies Darden's claim that it lacks personal jurisdiction.

United States District Court
Northern District of California

i.   Purposeful Injection

It has already been determined that Darden directed its activities at the forum to a degree sufficient to satisfy the purposeful availment requirement.  While "[t]here may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction, but this is not such a case." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114–15 (9th Cir. 2002) (finding purposeful injection where the defendants knew their scheme would injure Dole U.S., which they knew had its principal place of business in California and engaged in repeated communications with Dole managers in California in furtherance of their alleged scheme).  This factor weighs in favor of OFW.

ii.   Burden on Defendant

The second factor courts consider is the burden on the defendant in defending in the forum. Darden argues that it would be burdensome for its corporate witnesses to fly across the country to provide live testimony at trial.  *Reply* at 10:19-20.  Darden also notes that OFW's Complaint only identifies out of state Darden employees who were purportedly disparately impacted by Darden's policies and that OFW conceded that Darden's California workers were not subject to the cash wage policy implicated in its sex-based disparate impact claim.  *Id.* at 10:26-28.  As such, Darden claims that its cash wage employees would have to travel hundreds of miles to testify in person in this forum.  *Id.* at 11:1-7.

Although traveling to California to litigate the matter will create some burden due to travel and other expenses, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past."  *Menken*, 503 F.3d at 1060 (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)); *see also Alexis v. Rogers*, No. 15CV691-CAB-BLM, 2016 WL 11707630, at *11 (S.D. Cal. Feb. 26, 2016) (litigating in California would not be unduly burdensome where the defendant that is the principal officer of the other defendants appears to be a businessman who is accustomed to travel and a United States citizen that resides in Singapore).  This factor weighs slightly in Dander's favor.

14

iii.   Conflict with the Sovereignty of Defendant's state

As to the third factor, Darden does not argue that a conflict of sovereignty exists between California and some other state.  Therefore, this factor favors OFW.  *See Menken*, 503 F.3d at 1060 (finding third factor weighed in favor of the plaintiff because the parties agreed that a conflict of sovereignty did not exist).

iv.   California's Best Interest

The fourth factor is concerned with California's interest in adjudicating the matter. Notably, California does not have an interest with respect to the impact of Darden's policies on Darden employees outside of California.  However, the Ninth Circuit has consistently explained that a forum state "has a strong interest in protecting its residents from torts that cause injury within the state, and providing a forum for relief."  *Menken*, 503 F.3d at 1060 (quotations and citations omitted); *see also CE Distrib., LLC*, 380 F.3d at 1112; *Panavision Int'l, L.P.*, 141 F.3d at 1323; *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996); *Brainerd v. Governors of Univ. of Alta.*, 873 F.2d 1257, 1260 (9th Cir. 1989).  OFW alleges that it is a nonprofit with its principal place of business in California that advocates for subminimum wage restaurant workers, many of which are Californians.  Therefore, this factor tilts slightly in favor of OFW.  *See Alexis*, 2016 WL 11707630, at *12 (finding that "California has a strong interest in protecting people who perform work in California" and "a strong interest in the alleged sexual harassment, assault and wrongful termination of one of its residents").

v.   Efficient Resolution

Under the fifth factor, courts evaluate the efficiency of resolution in the forum.  Nothing indicates resolution in this or any other forum would be more efficient than another.  At issue are federal Title VII claims and Darden's employees are affected on a national basis.  Neither party has presented any reason why it would be more efficient to resolve this case in one district court more than any other district court other than the convenience of the witnesses and location of documents which slightly favors the Middle District of Florida.  Other than that, this factor does not strongly favor either party.

United States District Court
Northern District of California

vi.   Convenience to Plaintiff

The sixth factor weighs the importance of the plaintiff receiving a convenient and effective resolution.  It will be easier for OFW, a nonprofit organization with a principal place of business in Oakland, California, to litigate this dispute in the forum state in which it is at home.  Conversely, a greater burden would be placed on OFW if it was forced to litigate the claims in Florida.  This factor, although given little weight, tilts slightly in OFW's favor.  *See Menken*, 503 F.3d at 1061 (stating that, in the Ninth Circuit, "the plaintiff's convenience is not of paramount importance.") (quoting *Dole Food Co., Inc.*, 303 F.3d at 1116).

vii.   Alternative Forum

The Court also considers whether there is an adequate alternative forum and whether public interest factors favor dismissal.  *See Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1142–43 (9th Cir. 2001).  The plaintiff's choice of forum will not be disturbed unless the "private interest" and "public interest" factors strongly favor trial in the alternative forum.  *See Gates Learjet,* 743 F.2d 1325, 1334 (9th Cir. 1984).  *Cf. Cheng v. Boeing Co.,* 708 F.2d 1406, 1410 (9th Cir. 1983).  Here, Darden argues that there is a better alternative forum, such as the Middle District of Florida, where Darden is subject to general jurisdiction would be proper.  Reply at 11:9-10.  However, Darden fails to show that the balance of private interest and public interest factors favors dismissal.  Therefore, this factor weighs in favor of OFW.  *See Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) (*Forum non conveniens* is "an exceptional tool to be employed sparingly").

viii.   Balancing the Factors

In balancing the seven factors, this Court concludes that Darden fails to present a compelling case that the Court's exercise of jurisdiction would be unreasonable.

3.   Conclusion

OFW has made a prima facie showing that Darden is subject to this Court's specific personal jurisdiction under California's long-arm statute**.**  Accordingly, this Court **DENIES** Darden's Motion to Dismiss based on lack of personal jurisdiction.

B.      Venue

        OFW claims that venue is proper in this Court under Title VII, 42 USC § 2000e–5(f)(3)

because "Darden's unlawful employment practices were committed in California, implemented in

California, and had their effects felt in California, and because the employment records relevant to

those unlawful employment practices are maintained in California."  Compl. ¶ 12.

        In the instant case, OFW's two claims arise out Title VII, 42 USC § 2000e–5(f)(3).

Pursuant to 42 USC § 2000e–5(f)(3), venue is only appropriate in the judicial district where the

action was filed if one of the following is met:

            (1)  in any judicial district in the State in which the unlawful employment practice is

                 alleged to have been committed,

            (2)  in the judicial district in which the employment records relevant to such practice are

                 maintained and administered, or

            (3)  the judicial district in which the aggrieved person would have worked but for the

                 alleged unlawful employment practice, but if the respondent is not found within any

                 such district, then such an action may be brought within the judicial district in which

                 the respondent had his principal office.

        OFW argues that it has satisfied the first prong of Title VII's venue provision since its

race-based disparate impact claim is alleged to have been committed in California as Darden's

tipping policy is implemented in its California restaurants.  Opp'n at 10:21-24.  Further, OFW

asserts that venue is proper as to its cash wage policy claim since venue is proper as to its tipping

policy claim and contends that this Court should exercise pendent venue over the cash policy

claim.  *Id.* at 11:2-9.  OFW specifically asks the Court to exercise pendent venue since the policies

are closely related.  *Id.* at 10.  OFW alleges that Darden's cash wage policy "necessarily triggers

the need for servers and bartenders to be tipped . . . [and] tipping at Darden is regulated by the

[t]ipping [p]olicy."  *Id.* at 8.  As such, OFW asserts that in most parts of the country, where there

is a subminimum cash wage, the policies "are not capable of separation . . . ."  Compl. ¶ 80.

        "While the Ninth Circuit does not appear to have addressed the issue, courts in this District

have applied the pendent venue doctrine . . . ."  *Martensen v. Koch*, 942 F.Supp.2d 983, 998 (N.D.

United States District Court
Northern District of California

Cal. 2013).  Specifically, "under the pendent venue doctrine, when one or more claims are closely related (*e.g.*, arise out of a common nucleus of operative facts), venue is proper as to all claims so long as venue is established for just one claim.  This is because, where there is a close relationship, then judicial economy, convenience, and fairness all weigh in favor of adjudication in one proceeding." *Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1089 (N.D. Cal. 2018).

Since OFW alleges that Darden's tipping policy is implemented in California, under section 2000e–5(f)(3), the Northern District of California is an appropriate venue for this claim. *See Passantino v. Johnson & Johnson Consumer Products Inc.*, 212 F.3d 493, 506 (9th Cir.2000) (Under Title VII "venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt.").  Notably, OFW conceded that in California, the lowest possible wage a tipped employee can receive is the minimum wage (not a subminimum cash wage).  *See* Opp'n at 6:8-11.  As such, venue under Title VII's specific venue provision does not appear proper as to OFW's cash wage policy claim.  *See Johnson v. Payless Drug Stores Nw., Inc.*, 950 F.2d 586, 588 (9th Cir. 1991) (under section 2000e–5(f)(3), venue was not appropriate in the Northern District of California since the alleged employment discrimination occurred in Nevada and the defendant maintained and administered its employment records for its Nevada employees in Nevada).

In the instant matter, it appears that OFW has adequately established that there is a close relationship between Darden's tipping policy and cash wage policy and there is likely some overlap in terms of issues and proof.  In its reply, Darden does not dispute OFW's assertion that the claims are closely related but argues that both claims must satisfy Title VII's specific venue provision for the Court to exercise pendent venue.  Reply at 11-13.  This is incorrect.  *See Serv. Women's Action Network*, 320 F. Supp. 3d at 1089-90.  Accordingly, because the Court has venue over OFW's Title VII race-based disparate impact claim with respect to Darden's tipping policy, the Court **DENIES** Darden's motion to dismiss based on improper venue.

C.    Subject Matter Jurisdiction

For this Court to have subject matter jurisdiction, OFW must have standing under Article

III to pursue this case. Relying on *East Bay Sanctuary Covenant v. Biden*, 993 F. 3d 640 (9th Cir. 2021), OFW claims it has organization standing to sue under Article III because its mission has been frustrated by Darden's cash wage and tipping policies.

To establish Article III standing, a plaintiff must demonstrate: (1) injury-in-fact in the form of "concrete and particularized" and "actual or imminent" harm to a legally protected interest; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable decision would redress the injury-in-fact. *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 897 (9th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Allen v. Wright*, 468 U.S. 737, 751 (1984)). An organization may establish standing through either associational standing or organizational standing.

### 1. Associational Standing

For an organization to assert associational standing, it must show "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (citing *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998). To show that a member would have standing to sue in his or her own right, the organization "must show that a member suffers an injury-in-fact that is traceable to the defendant and likely to be redressed by a favorable decision." *Associated Gen. Contractors of Am., San Diego Chapter, Inc.*, 713 F.3d at 1194. In the instant case, OFW does not assert that it has associational standing.

### 2. Organization Standing

"Organizations are entitled to sue on their own behalf for injuries they have sustained." *Havens*, 455 U.S. at 379 n.19. "[A]n organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission [by the defendant's actions]; and (2) diversion of its resources to combat [that frustration]." *Smith v. Pac. Props. and Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). It is not enough to "manufacture the injury by

19

incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).  An organization "must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id.* It "may sue only if it was forced to choose between suffering an injury and diverting resources to counteract the injury." *Id.* at 1088 n.4.

Here, OFW does not specifically allege that Darden's policies have frustrated its stated mission of "requiring all employers to pay the full minimum wage as a cash wage with fair, non-discriminatory tips on top" in its complaint, but argues that the policies have adversely affected the organization by causing monetary and non-monetary harm by diverting resources.  Compl. ¶¶ 7, 66-72.  In its opposition, OFW alleges that it has suffered an injury that is concrete and strikes at the core of its purpose.  *See* Opp'n at 24:1-6.  OFW specifically claims that its mission has been frustrated by Darden's cash wage and tipping policies because the policies force Darden employees to spend their non-work hours recovering from sexual harassment and working to make additional money and do not allow non-work time for them to assist OFW by testifying against Darden's policies.  *See id.* at 22:3-13.

As for diversion of non-monetary resources, OFW claims that it "has been forced to address complaints from Darden employees subject to the cash wage policy that they have suffered more and worse sexual harassment because of their sex than Darden employees not subject to that policy, as well as complaints from Darden tipped employees of color that they have received less in tips than Darden tipped white employees because of their race (the vast majority of whom suffer substantially because Darden already pays them a subminimum wage)."  Compl. ¶ 67.  OFW notes that Saru Jayaraman, OFW's President, spends a significant amount of her time dealing with such complaints from Darden employees.  *Id.* ¶ 68.  Additionally, Julia Sebastian, OFW's Research Director, spends roughly one-fourth of her time at work dealing with such complaints from Darden employees and otherwise responding to the effects of the policies on those employees.  *Id.*  In dealing with complaints from Darden employees, OFW workers refer aggrieved employees to attorneys, therapists, and other social service providers.  Opp'n at 22.

United States District Court
Northern District of California

1          As for diversion of monetary resources, OFW alleges that because of Darden's cash wage

2   and tipping policies, it "spends tens of thousands of dollars annually, if not more, in salary and

3   consultant payments, employees' benefits, office supplies, digital engagement fees," etc., that

4   could have been spent addressing other matters.  Compl. ¶ 69.  Further, OFW claims that it "lost

5   more money as a result of Darden's policies because [OFW] has paid more cash assistance from

6   its Emergency Coronavirus Relief Fund to Darden employees subject to Darden's policies than

7   [OFW] would have paid otherwise."  *Id.* ¶¶ 8, 71-73.  OFW explained that it has paid cash relief

8   from the fund of $500 per employee to more than 350 Darden employees nationwide (including

9   more than 30 Darden employees in California), for a total of over $175,000 in cash assistance paid

10  to Darden employees affected by the coronavirus pandemic (over $15,000 of which was paid to

11  Darden employees in California).  [OFW] paid essentially all of that cash relief to Darden's tipped

12  employees who are (or were, prior to being laid off or furloughed) paid a subminimum wage."  *Id.*

13  at 72.

14         OFW argues that its "standing is equivalent to the standing that non-profits invoke all the

15  time in this Court, the Ninth Circuit, and around the country" and argues that Ninth Circuit's

16  reasoning in *East Bay Sanctuary Covenant* applies "[i]dentical[ly] here."  Opp'n at 21.  In *East*

17  *Bay Sanctuary Covenant v. Biden*, the Ninth Circuit found that the plaintiffs, legal services

18  organizations with the mission of assisting migrants seeking asylum, had organizational standing

19  because they demonstrated that the government's new asylum restriction rule frustrated their

20  purpose by causing them to divert significant resources away from their mission.  *See id.* at 663-

21  665.  Notably, the asylum restriction rule at issue stripped asylum eligibility from every migrant

22  that crossed into the United States between designated ports of entry, thereby discouraging large

23  numbers of migrants from seeking asylum.  *See id.* at 658.  As such, the Ninth Circuit explained

24  that the rule perceptibly impaired the organizations' ability to perform their mission of assisting

25  migrants seeking asylum because the organizations would have lost those clients seeking asylum

26  in the United States had they not diverted resources to counteracting the effect of the rule.  *See id.*

27  at 664.

28         Similar to the legal services organizations in *East Bay Sanctuary*, in *SurvJustice*, 2018 WL

United States District Court
Northern District of California

4770741, and *Victim Rights Law Center v. Cardona*, No. CV 20-11104-WGY, 2021 WL 3185743 (D. Mass. July 28, 2021), the U.S. Department of Education's (the "Department") actions frustrated the missions of organizations that provided legal representation and counseling to sexual harassment survivors.  The plaintiffs in *SurvJustice* were challenging the Department's new guidance "related to the procedures by which educational institutions investigate, adjudicate, and resolve allegations of student-on-student sexual misconduct."  2018 WL 4770741, at *3.  The plaintiffs there had missions that included increasing the prospect of justice for sexual violence survivors "*through legal assistance*;" "to *litigate*[] cases involving issues of gender discrimination in employment and education at all stages. . . [and to] *counsel[] and represent[]* women who have been victims of sexual harassment and/or sexual assault;" and "*to provide legal representation* to victims of rape and sexual assault."  2018 WL 4770741, at *4 (emphases added).  Because the guidance at issue "discourage[d] survivors of sexual harassment and sexual violence from filing complaints," Magistrate Judge Corley concluded it frustrated these organizations' missions, which involved prosecuting those very same complaints.  *Id.* at *6–*7.  Similarly, Judge Young of the District of Massachusetts held that Victim Rights Law Center "demonstrate[d] a direct impairment from [similar regulations that reduce protections for students enrolled in public schools from sexual harassment and sexual violence]" because it "advocate[d] on behalf of victims of sexual assault during the Title IX process," and "experienced a reduction in requests for its services."  *Victims Rts. Law Ctr.*, 2021 WL 3185743, at *10.

The instant case is similar to *Know Your IX v. DeVos*, where Judge Bennett of the District of Maryland recently concluded two organizations—Know Your IX and Gender Equity—failed to establish that the Department's recently enacted regulations that reduce protections for public school students from sexual harassment and violence frustrated their missions for purposes of organizational standing.  No. CV RDB-20-01224, 2020 WL 6150935, at *5 (D. Md. Oct. 20, 2020).  Like OFW is arguing here, the plaintiffs in *Know Your IX* alleged that because of the Department's regulations, they will need to dedicate additional staff time and resources to advocate at the local and state levels for measures that are proven to prevent the occurrence of sexual harassment and assault.  *Id.* at *5.  Gender Equity "claim[ed] that its core mission [was]

22

carried out through policy advocacy," and Know Your IX's "goal [was] to empower high school and college students to end sexual and dating violence in their schools through legal rights education; training, organizing, and supporting student-survivor activists; and advocating for campus, state, and federal policy change." *Id.* at *6–*7.  Like OFW here, neither organization represented or offered legal services. *Id.* at *6.  Although the *Know Your IX* plaintiffs argued they had to spend more time and resources to accomplish their mission, the court concluded that "resource reallocations motivated by the dictates of preference, however sincere, are not cognizable organizational injuries because no action by the defendant *has directly impaired the organization's ability to operate and function*." *Id.* at *7 (emphasis added) (quoting *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 239 (4th Cir. 2020)).

Here, questions are raised as to whether OFW has organizational standing.  Devoting additional resources to its lobbying efforts as a result on Darden practicing the kind of policies challenged herein lies squarely within OFW's mission and does not appear to constitute the kind of diversion of resources found sufficient in other claims.  As to the use of resources for providing advice and referrals to individual employees, it does not appear that OFW's mission includes providing representation and counseling to individual employees; thus, it could be contended that providing advice and referrals to Darden employees was a voluntary activity not required pursuant to its mission. *Cf. Fair Employment Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276–77 (D.C. Cir. 1994) (rejecting the idea that a plaintiff organization has standing to sue based solely on its own decision regarding resources allocation, and requiring that the plaintiff be forced to divert resources in order to avoid an injury caused by defendant's conduct).  And *Know Your IX* suggests there has not been a sufficient showing of direct impairment of OFW's ability to operate and function to confer standing.  To be sure, case law is admittedly nebulous as to what qualifies as a requisite diversion of resource for organizational standing under Article III.  Because the Court finds OFW lacks statutory standing under Title VII, it need not resolve the Article III question.

D.     Failure to State a Claim

Title VII grants standing to a person bringing an action for an alleged "unlawful employment practice . . . for an employer to fail or refuse to hire or to discharge any individual, or

United States District Court
Northern District of California

otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  To have standing to bring such an action the plaintiff must be "a person claiming to be aggrieved . . . " under 42 U.S.C. § 2000e-5.  *Waters v. Heublein, Inc.,* 547 F.2d 466, 469 (9th Cir. 1976).  To qualify as a person aggrieved, the claimant must assert a claim that "falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint."  *See Thompson v. N. Am. Stainless, LP*, 131 S.Ct. 863, 870 (2011).  No claimant can satisfy Title VII's zone-of-interests test when his or her "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit."  *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

OFW argues that it has statutory standing to sue because its sex and race-based disparate impact claims fall within Title VII's zone of interests.  Opp'n at 12.  Darden argues that this Court should dismiss because OFW does not have statutory standing to bring the Title VII claims it alleges and its theory of liability is implausible.  *See* Docket No. 17, MTD at 1:13-15.

1.   Statutory Standing Under Title VII

Darden argues that OFW lacks statutory standing because it is not an employee of Darden. It relies on *Patee v. Pac. Nw. Bell Tel. Co*., 803 F.2d 476 (9th Cir. 1986) and *Simmons v. UBS Fin. Servs., Inc*., 972 F.3d 664, 665 (5th Cir. 2020), cert. denied, 141 S. Ct. 1382 (2021) as supporting its position that only affected employees may sue under Title VII.

In *Patee*, a group of male employees alleged that they were discriminated against because, as part of a group of predominately female workers, they were subject to sex-based wage discrimination directed towards females.  *Patee*, 803 F.2d at 477.  The Ninth Circuit held that the men could not assert the right of their female co-workers to be free from discrimination based on their sex and as such, they did not have standing under Title VII to present a claim of discriminatory practices against women in the workplace.  *Id*. at 478-479.  The Ninth Circuit emphasized that the male employees were not attempting to assert that they had been discriminated against because they were men, but rather, they were bootstrapping their job

grievances. *Id.* at 478. The Ninth Circuit relied on *Spaulding v. University of Washington*, 740 F.2d 686 (9th Cir. 1984), finding it "logically indistinguishable from the issue presented" to reach its conclusion. *Patee*, 803 F.2d at 478. In *Spaulding*, a male nursing faculty member attempted to assert a claim that he was receiving salary infected by sex-based discrimination directed at female nursing faculty members. *Spaulding*, 740 F.2d at 709. Similarly, the male nursing faculty member made no claim that he received a lower wage because of his sex. *Id.* The *Spaulding* Court held that even if the female faculty members have cognizable employment discrimination claims, Title VII does not permit male employees to bootstrap their job grievances into an employment discrimination claim under Title VII as they are not claiming discrimination based on their own sex. *See id.*

In *Simmons*, the plaintiff was an employee of a third-party life insurance company and brought a Title VII claim against a financial services company. The plaintiff claimed that he suffered damages due to the financial service company's alleged pregnancy discrimination that was filed by the plaintiff's daughter, who was an employee of the financial services company. *Simmons*, 972 F.3d at 665. Notably, the plaintiff sold life-insurance products to clients of the financial services company and prior to his daughter claiming pregnancy discrimination, he frequently worked out of their offices. *Id.* Specifically, the plaintiff claimed that his third-party relationship with the financial services company deteriorated as a result of his daughter's pregnancy discrimination claim against her employer. *Id.* The plaintiff was a non-employee arguing that he has standing under Title VII as the intentional target of the retaliation against his daughter based on her filing a pregnancy discrimination claim against her employer, the defendant. The Fifth Circuit held that the plaintiff did not have standing under Title VII because Title VII "protects employees from the unlawful acts of their employers. It does not—even arguably—protect nonemployees from mistreatment by someone else's employer." *Id.* at 671; *see id.* at 668 ("[t]he zone of interests that Title VII protects is limited to those in employment relationships with the defendant"). The court assumed, without deciding, in *Simmons* that the plaintiff's daughter (as distinct from the non-employee father) who complained of pregnancy discrimination would have a viable retaliation claim based on her employer's termination of its

business relationship with her father under Title VII.  *See Simmons*, 972 F.3d at 666.

OFW claims that *Patee* "is no longer good law" because it "was decided decades before *Thompson*" established the zone of interests test for Title VII claims.  Opp'n at 16.  Although the Ninth Circuit has not addressed the question of non-employee standing under Title VII, *Patee* suggests that standing under Title VII is not as sweeping as OFW suggests.  OFW's contention that *Patee* is no longer good law because it was decided well before *Thompson* is misplaced. *Patee*'s conclusion that men do not have viable claims for sex-based wage discrimination that is directed at their female coworkers under Title VII appears in line with *Thompson*'s zone of interests.  *See Thompson,* 131 S.Ct. at 870 (holding that Thompson was well within the zone of interests protected by Title VII where he was fired by his employer, the defendant, as a form of retaliation against another employee that filed a discrimination claim . . . .  "Thompson is not an accidental victim of retaliation . . . .").  Although OFW argues that *Simmons* "should not be followed" because its conclusion "ignores the purpose of Title VII" and *Thompson*'s zone of interests precedent, the Fifth Circuit in *Simmons* relied on *Thompson,* 131 S.Ct. 863, in concluding that the zone of interests that Title VII protects is limited to those in employment relationships with the defendant.  *See Simmons*, 972 F.3d at 668 ("it is no accident that Thompson's example of an 'absurd' case for statutory standing involved a nonemployee") (quoting *Thompson,* 131 S.Ct. at 869).

OFW nonetheless argues that both of its claims fall within Title VII's zone of interests because there is a "broad private right of action" to enforce Title VII's provision prohibiting employers from discriminating against employees based on race, religion, sex, national origin, et cetera.  Opp'n at 12:15-24.  OFW points to the language in Title VII:  "a civil action may be brought against the respondent named in the charge (A) *by the person claiming to be aggrieved* . . . by the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(1) (emphasis added).  It contends it is a "person claiming to be aggrieved," because Darden's policies conflict with OFW's mission that is focused on ending the subminimum wage and their effect on exacerbating sex- and race-based discrimination in the workplace and that it has experienced injury in its having to divert resources to contend with the consequences of Darden's policies.  In support, OFW cites the out-

of-circuit district court's decision in *Tolar v. Cummings*, No. 2:13-CV- 00132-JEO, 2014 WL 3974671, (N.D. Ala. Aug. 11, 2014), in arguing that non-employees can fall within Title VII's zone of interest.  The plaintiffs in *Tolar* were non-employees that did business with the bank until the daughter, an employee of the bank, complained to the bank that she had been sexually harassed.  *See id.* at *1-2.  The employee's father was a lawyer that had done legal work for the bank.  The bank then retaliated against him by no longer referring any legal work to him.  *Id.* at *3.  The bank also sued the employee's uncle and brother after she complained of sexual harassment, alleging that they fraudulently transferred money out of the family trust to thwart the bank from collecting it.  *See id.*  The employee's father, brother, and uncle sued the bank for unlawful retaliation under Title VII and the court found that they had standing and were arguably within Title VII's zone of interests even though they were non-employees.  *See id.* at *15.  In reaching this conclusion the court relied on case law supporting the contention that Title VII's anti-retaliation provision covers a broad range of employer conduct and "'does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace'" *Id.* at *8 (quoting *Burlington Northern and Santa Fe Ry. v. White*, 126 S.Ct. 2405, 2409 (2006)).  Additionally, the court noted that in *Thompson,* 131 S.Ct. at 868, the Supreme Court held that "the *Burlington* Standard for actionable retaliation would be met if a defendant company had terminated the plaintiff's employment as a means by which to retaliate indirectly against the plaintiff's fiancé, also an employee of the company, because the fiancé had filed an EEOC charge against the company.  The [Supreme] Court thus rejected the employer's argument in favor of 'a categorical rule that third-party reprisals do not violate Title VII. *Id.* (quoting *Thompson*, 131 S.Ct. at 868).

   *Tolar* appears inconsistent with *Simmons*, particularly in light of *Simmon*'s distinction between the right of the employee versus her father to bring suit.  Importantly, *Tolar* and *Simmons* both concern non-employee standing under Title VII's anti-retaliation provision, which is not at issue here as OFW does not allege that it was the target of unlawful retaliation like the plaintiffs in *Tolar* and *Simmons*.  OFW has cited no authority holding that a non-employee who is only derivatively affected by alleged sex and race-based discrimination can sue under Title VII in lieu

27

1    of or on behalf of the directly affected employee.  Although OFW cites *East Bay Sanctuary*

2    *Covenant* to supports its claim that non-employees have standing under Title VII, standing under

3    Title VII is not synonymous with Article III standing at issue in *East Bay Sanctuary Covenant.*

4    *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547-48 (2016) (injury in fact is a constitutional

5    requirement for standing and Congress cannot erase Article III's standing requirements by

6    statutorily granting the right to sue to a plaintiff that would not otherwise have standing).

7         Simply put, OFW cites no case law establishing that a non-employee – here, an advocacy

8    organization – has standing to challenge an employment practice, particularly where the alleged

9    injury it contends renders it "aggrieved" is either purely ideological or entirely derivative of the

10   injury directly suffered by actual employees.

11        The sweeping and implausible nature of OFW's statutory standing theory is underscored

12   by the fact that, if accepted, it would circumvent class certification pursuant to Rule 23 and its

13   requirements of numerosity, commonality, typicality, and adequate representation for class

14   certification under Rule 23(a) and (where monetary relief is sought) predominance superiority, and

15   manageability under Rule 23(b)(3).  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-360.

16   OFW's broad standing approach would ignore the protection afforded to the class via Rule 23's

17   requirements of notice, objection rights, and judicial scrutiny of any class settlement.  This is

18   particularly pertinent here, as there may well be employees who object to the changes sought by

19   OFW to eliminate unmediated tipping.  Under OFW's proposed procedure, any advocacy

20   organization such as OFW could sidestep Rule 23 and sue for what is tantamount to classwide

21   relief – as OFW effectively seeks here.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1    Since OFW does not have standing under Title VII to sue, this Court need not address the

2    plausibility of OFW's theory of liability.  Accordingly, this Court **GRANTS** Darden's motion to

3    dismiss for failure to state a claim and does so with prejudice, as any attempt to amend would be

4    futile.

5    This order disposes of Docket Nos. 15, 16, 17, 23, and 24.

6

7    **IT IS SO ORDERED**.

8

9    Dated: September 14, 2021

10

11   _____

12   EDWARD M. CHEN
     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28