YESENIA GALLEGOS (SBN 231852)
ygallegos@mwe.com
CHRISTOPHER BRAHAM (SBN 293367)
cbraham@mwe.com
MARJORIE C. SOTO (SBN 313290)
mcsoto@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:     +1 310 277 4110
Facsimile:      +1 310 277 4730

Attorneys for Defendant
DARDEN RESTAURANTS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ONE FAIR WAGE, INC., | Case 3:21-cv-02695-EMC |
| Plaintiff, | Judge: Hon. Edward M. Chen |
| v. | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE LAWSUIT AND THE MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| DARDEN RESTAURANTS, INC., | |
| Defendant. | Hearing Date:     January 11, 2024 |
| | Time:                 1:30 p.m. |
| | Ctrm.:               G – 15th Floor |
| | Complaint Filed:  April 15, 2021 |
| | SAC Filed:          November 15, 2023 |

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on January 11, 2024 at 1:30 p.m., or as soon thereafter as counsel may be heard in the courtroom of the Honorable Edward M. Chen, located at the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Darden Restaurants, Inc. ("Darden"), will, and hereby does, move the Court for an order dismissing Plaintiff One Fair Wage's ("OFW") lawsuit for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Darden also will, and hereby does, move the Court for an order dismissing OFW's lawsuit for failing to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6) because it lacks statutory standing to sue under Title VII.  Pursuant to the Court's instruction and for the sake of brevity, Darden incorporates by reference its prior FRCP 12(b)(6) Motion (ECF Nos. 16 and 22) as if it is stated in full herein and only briefs its argument for why the Court should dismiss OFW's lawsuit for a lack of subject matter jurisdiction.

## STATEMENT OF RELIEF REQUESTED

Darden requests that this Court dismiss this lawsuit in its entirety without leave to amend on the grounds that: (1) this Court lacks subject matter jurisdiction over OFW's claims because OFW incurable lacks Article III standing to bring the claims asserted in this Action; and (2) OFW lacks statutory standing to bring the Title VII claims alleged in the lawsuit.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court previously dismissed an OFW complaint for a lack of Article III standing.  The Court should do it again because OFW's SAC still fails to satisfy any of the three prongs associated with the Article III standing test.

***First***, OFW feigns as though it suffered a concrete injury because Darden's tipping and cash wage policies "forced" it to divert resources away from its core functions.  Not so.  OFW's Second Amended Complaint ("SAC") and the new allegations contained therein still do not establish that it suffered a legally cognizable concrete injury.  OFW, an advocacy organization, making voluntarily decisions to dedicate time and money assisting Darden employees so that said individuals will be motivated to help OFW advocate does not give rise to a concrete injury that imbues it with Article III

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

standing.  Case law is clear: resource reallocations motivated by preference and not in response to external conduct that directly impairs the organization's operational functions is not a legally cognizable injury.

**_Second_**, OFW cannot get around the fact that its lawsuit and the injury it contends it suffered necessarily derives from actions of independent non-parties and is not fairly traceable to Darden.  OFW's lawsuit necessarily arises out of its allegation that Darden's **_customers_** engage in discriminatory tipping and sexual harassment.  This core allegation severs the traceability line back to Darden and is fatal to OFW ever being able to establish Article III standing.

**_Third_**, the redressability strictures placed on this Court by Article III prohibit it from granting OFW's tacit request to abandon the Federal Rules of Civil Procedure governing class actions and obliterate Darden's due process rights by subjecting it to a risk of inconsistent rulings on identical legal issues.  Nor can OFW get around the obvious: OFW's core mission relies on the existence of the policies it complains about.  A favorable ruling in this case would not remedy OFW's alleged harm; instead, it would do the opposite and impair OFW's future operations.

For each of these reasons, which are discussed in greater detail herein, the Court should grant this Motion and dismiss the Complaint with prejudice.

## II.  PERTINENT FACTUAL ALLEGATIONS

Darden is a Florida corporation with it principal place of business is in Orlando, Florida.  (*See* ECF. No. 58 ("SAC"), ¶ 9.)  OFW is purportedly a 501(c) non-profit that "focuses specifically on helping employees in the restaurant industry" with an alleged mission of "seeking to end all subminimum wages in the United States and increase the sustainability of wages and working conditions in the service sector."  (Id., ¶ 7.)  ***OFW claims are necessarily founded on its contention that Darden's customers tip Darden employees of color less and sexually harass Darden's female employees before tipping them***.  (Id., ¶¶ 62, 63, 67, 69, 71, 73, 74, 77.)  OFW contends that Darden not mitigating this problem and maintaining corporate policies of taking a "tip credit" towards its minimum wage obligations, a right expressly afforded to it under the FLSA (29 C.F.R. 531.59), as well as not requiring employees to pool their tips, forces OFW to divert resources towards assisting certain Darden's employees who have been subjected to discrimination and sexual harassment because

of the alleged uneven ways in how Darden's customers tip.  (SAC ¶¶ 1-2; 5; 7-9; 15; 17; 72; 91-98.)  OFW attempts to illustrate this point by highlighting the purported work experiences of two former Darden employees.  (SAC ¶¶ 100 – 132.)

### III.  **PROCEDURAL HISTORY**

On April 15, 2021, OFW filed a complaint against Darden seeking to recoup damages in its own name and for the issuance of a nationwide injunction based on a claim that Darden violated Title VII.  (ECF No. 1.)  Darden immediately moved to dismiss based on, among other things, an argument that OFW lacked Article III standing to sue and lacked statutory standing to sue under Title VII. (ECF Nos. 16 and 17.)  This Court previously issued an order suggesting that OFW lacked Article III standing because case law "suggests there has not been a sufficient showing of direct impairment of OFW's ability to operate and function to confer [Article III] standing."  (ECF No. 30 pp. 23:21-23.)  Notwithstanding, the Court determined it unnecessary to definitely resolve the inquiry because OFW unequivocally lacked statutory standing to sue under Title VII for uncurable reasons. (ECF No. 30.)

OFW appealed the Court's decision to dismiss its lawsuit for a lack of statutory standing.  (ECF No. 32.)  The Ninth Circuit vacated this Court's prior opinion because it concluded that, absent an explanation for why OFW's lack of statutory standing to sue is subject matter adjacent, this Court must first resolve the inquiry of whether OFW has Article III standing before it could conclude that OFW lacked statutory standing to sue under Title VII.  (ECF No. 37.)

Prior to answering the Ninth Circuit's Article III inquiry, OFW asked if it could file an Amended Complaint ("FAC") to bolster its Article III standing.  (ECF No. 41.)  The Court granted OFW's request to "amend *one final time* and make its best case before ruling on Article III jurisdiction.."  (ECF No. 42 (emphasis added).)  Shortly after OFW filed its FAC, Darden filed a second motion to dismiss contending that OFW's SAC still did not demonstrate how it had Article III standing and statutory standing to bring its lawsuit.  (ECF No. 44.)  In resolving Darden's motion, the Court did not need to reconfirm its prior conclusion that OFW lacked statutory standing because it concluded OFW lacked Article III standing.  (ECF No. 54.)  Specifically, the Court concluded that because OFW's "mission is to lobby and advocate" for the elimination of subminimum wages, it seems

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

3

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1   that Darden's "challenged policies would drive impacted employees to OFW".  (ECF No. 54 pp. 10-

2   11.)  As such, the Court agreed with Darden's assessment that OFW's challenged policies do not injure

3   OFW; conversely, Darden's challenged policies incentivize individuals "to work with an organization

4   such as OFW".  (Id.)

5         Notwithstanding its holding, the Court afforded OFW ninety (90) days to file a SAC

6   presumably as the final opportunity for OFW to explain why it has Article III standing to bring this

7   lawsuit.  (See ECF No. 57.)  On November 15, 2023, OFW filed its SAC.  (ECF No. 58.)  For the

8   reasons explained below, OFW's lawsuit should be dismissed with prejudice because its SAC still

9   fails to explain why OFW has Article III standing to sue.

10  ## IV.   **ARGUMENT**

11        "[T]he irreducible constitutional minimum of [Article III] standing" contains three elements,

12  namely, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

13  challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

14  decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  A lawsuit devoid of Article III

15  jurisdiction is a lawsuit without subject matter jurisdiction and subject to dismissal pursuant to Federal

16  Rule of Civil Procedure 12(b)(1).  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack

17  of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of

18  Civil Procedure 12(b)(1).").

19        The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction.  *See Sopcak*

20  *v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995); *Ass'n of Am. Med. Coll. v. United*

21  *States*, 217 F.3d 770, 778–79 (9th Cir. 2000).  Rule 12(b)(1) jurisdictional attacks can be facial.  *Safe*

22  *Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack asserts that the

23  allegations in a complaint on their face are insufficient to invoke federal jurisdiction.  *Id.*  Thus, courts

24  "accept all allegations of fact in the complaint as true and construe them in the light most favorable to

25  the plaintiffs."  *Pinkert v. Schwab Charitable Fund*, No. 20-CV-07657-LB, 2021 WL 2476869, at *2

26  (N.D. Cal. June 17, 2021) (quoting *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th

27  Cir. 2003)).  However, subject matter jurisdiction can also be challenged through a factual attack

28  which, "disputes the truth of the allegations that, by themselves, would otherwise invoke federal

4

jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  With a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply." *Id.*  In resolving such a facial attack, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Darden expressly asserts both a facial and factual challenge to OFW's subject matter jurisdiction; therefore, in responding to this motion, OFW must explain both why the face of its SAC provides it with subject matter jurisdiction and provide evidence that demonstrates its allegations in dispute are indeed true.  *Id.*

A.     **OFW's SAC Is Devoid Of Plausible Facts That Demonstrate It Suffered A Legally Cognizable Injury**

To establish organizational standing, OFW needed to show that: (1) Darden's cash wage and tipping policies frustrate their organizational missions; ***and*** (2) that it diverted resources to combat that conduct.  *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (holding that "an organization may establish 'injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [conduct] in question.'" (emphasis added)).

In this case, Darden has already discussed at great length why OFW cannot allege facts (let alone facts that can be supported with evidence) to demonstrate why it has organizational standing to sue Darden.  For the sake brevity, Darden will simply reincorporate by reference its prior briefing on this issue into this Motion.  (ECF Nos. 17, 22, 44 and 51.)  The new allegations included in OFW's SAC about the purported experiences of two former Darden employees does not change the calculus on the issue.  OFW continues to miss the big picture: unlike the service organizations referenced in the authorities OFW relies on for its organizational standing, OFW is a lobbying and advocacy organization.  What causes an injury to a service organization is not analogous to what causes an injury to an advocacy organization.  OFW voluntarily deciding to allocate time and money towards assisting Darden employees so that these individuals are motivated to assist in their lobbying and advocacy

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

efforts to eliminate the tip credit is ***not*** the type of forced diversion of resources that courts previously recognized as giving rise to organizational standing for service organizations.  The conduct OFW contends drives it injury, i.e. – Darden's cash wage and tipping policies – provides OFW with its organizational advocacy mission (it does not frustrate OFW's mission).  In other words, if restaurant companies, like Darden, eliminated the use of the tip credit, then OFW would have no organizational purpose.

The holding from *City of Philadelphia v. Beretta* provides a well-reasoned explanation for why this Court should not endorse OFW's limitless argument for Article III standing that it puts forward now for itself and other advocacy organizations:

> It is also disturbing that the organizational plaintiffs argue that they may sue for the costs of educational sessions and other programs which they run to counteract gun violence. By this logic, any social action organization may confer standing upon itself by voluntarily spending money on the social problem of its choice. Analogously, the environmentalist group in Lujan would have standing to protest the endangerment of wildlife in Sri Lanka simply by running programs to preserve foreign fauna. This would be a novel and vast expansion of associational liability for which plaintiffs have advanced no precedential support. It also contradicts the prudential concern behind the standing doctrine that courts not become vehicles for the advancement of ideological and academic agendas.

*City of Philadelphia v. Beretta U.S.A., Corp.* ("*Beretta*"), 126 F. Supp. 2d 882, 888 (E.D. Pa. 2000), aff'd, 277 F.3d 415 (3d Cir. 2002).  What OFW is doing with its resources to help restaurant workers is driven purely by internal choices: there is no external impairment to OFW's operations if it opted not to provide cash assistance or dedicate any time to helping any Darden employee who was purportedly subjected to harassment and discrimination.  OFW's Article III injury argument is no different than what the Third Circuit affirmed as a "disturbing" argument in *Beretta*.  OFW cannot manufacture a legally cognizable injury that escapes clear case law: "resource reallocations motivated by the dictates of preference, however sincere, are not cognizable organizational injuries because no action by the defendant has directly impaired the organizations ability to operate and function." *Know Your IX v. DeVos*, 2020 WL 6150935, *7 (D. Maryland Oct. 20, 2020).

Accordingly, the Court should once again reject OFW's claim for Article III standing and dismiss the case with prejudice.

**B.** **OFW's Purported Injury Is Not Fairly Traceable To Darden**

"Fair traceability," the second prong of the standing test, requires a "substantial likelihood" that the defendant's conduct caused injury to the plaintiff. *Duke Power Co. v. Carolina Envt'l Study Group, Inc.*, 438 U.S. 59, 75 (1978). The alleged harm to the plaintiff is not fairly traceable to the defendant if the harm was a "result [of] independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The holding in *Beretta* provides this Court with a powerful example for why OFW's alleged injury is not fairly traceable to Darden.

In *Beretta*, various social advocacy organizations brought suit against the gun industry claiming that the gun industry's methods for marketing and distributing guns was negligent and a public nuisance. *Beretta*, 126 F.Supp.2d at 886. The social advocacy organizations claimed that they had Article III standing to prosecute the claim in federal court because the gun industry's marketing and distribution schemes are responsible for gun violence which, in turn, forced them to expend resources providing gun educational sessions and other programs to counteract gun violence. *See id.* at 897. The court rejected the social advocacy organizations' argument for Article III standing because it concluded that the harm the social advocacy organizations complained about only occurred because of several intervening actions by independent individuals. *Id.* Specifically, the court noted that illegal conduct and harm to the social advocacy organizations could only occur if there was intervening actions undertaken by independent individuals, i.e. – "the federally licensed dealer must sell the gun; the straw buyer must resell it; the criminal must use it." *Id.* Such independent actors, and the actions that the allegations in the complaint necessarily required them to undertake before the alleged harm could occur, severed the fairly traceable line back to the gun manufacturer defendants in the case. *Id.*

Here, the Court cannot conclude that OFW's purported injury is fairly traceable to Darden because the SAC explicitly calls out independent actions of other third parties who are not before the Court.[1] OFW's injury and lawsuit necessarily derives from its allegations that Darden's ***customers*** sexually harass Darden's female employees and do not tip Darden's female and non-white employees equally to how they tip Darden's male and white employees. (ECF No. 58, ¶¶ 62, 63, 67, 69, 70, 71,

---

[1] OFW's SAC is explicit in this regard when it acknowledges that its core problem with Darden derives from its belief that Darden is not taking appropriate steps to "mediate" or "mitigate" the harm caused by independent third parties, i.e. – Darden's customers. (SAC, ¶¶ 70, 86.)

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

73, 74, 77, 86.)  This core allegation places this Action directly on point with *Beretta* in that a liability determination here cannot be born without restaurant customers engaging in alleged discriminatory tipping.  The actions of these independent non-parties severs the fairly traceable line back to Darden because OFW's alleged harm cannot be natural consequence of Darden's tipping and cash wage policies.  This should be obvious because its undisputed that Darden's policies are facially compliant with the law.  Akin to the conduct of unnamed third parties dooming the Article III standing argument for the social advocacy organizations in *Bereta*, this Court should similarly conclude that the SAC inherently requiring Darden's customers to engage in discriminatory tipping eviscerates OFW's ability to claim that its alleged injury is fairly traceable back to Darden.

Accordingly, and for this independent reason, the Court must dismiss OFW's lawsuit for a lack of Article III standing.

## C.    OFW Cannot Explain Why A Favorable Ruling Would Redress The Specific Injury Alleged

In granting Darden's Motion to Dismiss OFW's FAC, the Court previously concluded that "[b]ecause OFW has not sufficiently alleged that Darden employees would lobby on their behalf in the absence of Darden's policies, it is speculative that enjoining those policies would result in those employees lending their voices to OFW."  (ECF No. 54, pp. 13:15-17.)  OFW's operative pleading now including factual allegations about the purported experiences of two *former* Darden employees and why it resulted in them having less time to help OFW does not defeat this logic.  The Court would still have to impermissibly speculate that if Darden's cash wage and tipping policies did not exist then former employees like Jillian Menton and Zain Youssef would have spent more time helping OFW.[2] *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 869 (9th Cir.2002) (noting that a claim is not

---

[2] Ms. Menton has not been employed by Darden since October 31, 2020, and Mr. Youssef only worked two short stints for Darden: (1) February 9, 2017 to May 21, 2017; and (2) July 14, 2023 to September 5, 2023.  Its speculative to say what Ms. Menton would have done with her spare time over three years ago.  The same is true for claiming what Mr. Youssef would have done during his spare time during the limited period of time he was employed by Darden (it also must be said that Mr. Youssef was not even employed by Darden at any point in proximity to the COVID pandemic – OFW trying to link any of Darden's actions to his need to take money from its COVID relief fund is simply implausible).  Neither Ms. Menton nor Mr. Youssef are before the Court and we do not know what other obligations any of them had – such as childcare or parental obligations – and whether such obligations would have impacted their respective ability to assist OFW.  Nor can we assume that any of them would have worked less if Darden had different cash wage and tipping policies.  Put simply, OFW's contentions require a multitude of impermissible assumptions and guesswork.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

redressable as "too speculative if it can be redressed only through 'the unfettered choices made by independent actors not before the court' "). The Supreme Court has already concluded that this level of speculative "guesswork" on whether a requested remedy would redress the alleged injury cannot drive Article III standing. *Clapper v. Amnesty Int''l USA*, 568 U.S. 398, 413-14, 133 (2013) (no standing where the court would have to rely on "speculation" or "guesswork as to how independent decisionmakers will exercise their judgment."). Moreover, what harms did or did not happen to former employees cannot serve as a basis for an injunction because their experiences are not ongoing and do not give rise to the need for prospective relief like an injunction. *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017) (rejecting injunction request because "a former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief"). As such, the SAC remains devoid of any facts, let alone facts that can be supported with evidence, demonstrating how providing any of OFW's requested remedies would result in Darden employees actually assisting OFW. This conclusion is obvious even before considering the Court's other astute observation: the Court enjoining Darden's policies would adversely impact OFW, not benefit it, because such a remedy would eliminate an individual's motivation to assist OFW's advocacy efforts. (ECF No. 54, pp. 13, fn. 6.)

We be remiss if we did not also remind the Court that OFW's lawsuit is not redressable because it is founded on a litigation scheme fraught with Constitutional concerns. Granting OFW any remedy here necessarily calls for a violation of Darden's due process rights. That is because OFW cannot establish liability on its disparate impact claim without first proving any of the Darden's employees were disparately impacted by Darden's cash wage and tipping policies. This subjects Darden to prejudice because Darden is unable to invoke the doctrine of issue preclusion on any duplicative disparate impact claim asserted by any Darden employee in future litigation because said employees are not in privity with OFW. *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 858 (9thCir. 2016) (holding that to determine if the issue preclusion doctrine applies, among other things, the "the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding."). In other words, litigating this lawsuit on the merits will violate Darden's due process

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

9

rights because the Court ruling that Darden's policies did not disparately impact any of its employees has no impact on future duplicative litigation and opens the door for inconsistent rulings. *See C. A. B. v. Tour Travel Enterprises, Inc.*, 605 F.2d 998, 1005 (7th Cir. 1979) (noting a fairness problem to a defendant "[i]f absentees are not bound by this court's ruling" because it will result in the defendant potentially being "faced with multiple liability in subsequent actions if a later court disagrees with our determination").

Accordingly, and for this independent reason, the Court must dismiss OFW's lawsuit for lack of Article III standing because the Court cannot even issue a judgment in its favor that redresses any of its purported injuries.

## V.     **CONCLUSION**

Based on the foregoing, Darden respectfully requests that this Court grant its motion to dismiss without leave to amend because this Court lacks subject matter jurisdiction over the claims alleged in this Action.

Dated: November 29, 2023          Respectfully submitted,

                                  **MCDERMOTT WILL & EMERY LLP**


                                  By:   /s/*Christopher Braham*
                                        YESENIA GALLEGOS
                                        CHRISTOPHER BRAHAM
                                        MARJORIE C. SOTO
                                        Attorneys for Defendant
                                        DARDEN RESTAURANTS, INC.